## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| TEDDY SCOTT AND MELANIE SCOTT, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:16CV1440 HEA |
| ) | |
| DYNO NOBEL, INC., ) | |
| ) | |
| Defendant. ) | |

### OPINION, MEMORANDUM AND ORDER

This diversity case is before the Court on Defendant's Motion for Summary Judgment [Doc. No. 131] on the entirety of Plaintiffs' First Amended Complaint [Doc. No. 20].  Plaintiff opposes the motion.  For the reasons set forth below, Defendant's Motion will be granted.

Defendants also moved for Partial Summary Judgment as to punitive damages [Doc. No. 136].  Defendant's Motion for Partial Summary Judgment will be denied as moot.

Numerous motions pertaining to discovery and evidentiary matters are pending before this court.  Because Defendant's Motion for Summary Judgment will be granted, the following motions will be denied as moot: Defendant's Motion for Physical Examination of Teddy Scott [Doc. No. 36]; Defendant's Emergency Motion to Compel Production of Teddy Scott's Medical Records [Doc. No. 71];

Plaintiffs' Second Motion to Compel [Doc. No. 75]; Plaintiffs' Motion to Compel

Complete Reponses to Third Request for Production of Documents [Doc. No. 79];

Plaintiffs' Fourth Motion to Compel [Doc. No. 84]; Non-party Pike County

Memorial Hospital's Motion to Quash Subpoena *Duces Tecum* [Doc. No. 105];

Defendant's Motion to Exclude Expert Testimony of Jennifer Morningstar [Doc.

No. 123]; Defendant's Motion to Exclude Expert Testimony of Dr. Carla Sevin

[Doc. No. 125]; Defendant's Motion to Exclude Expert Testimony of Dr. Eric

Norsworthy [Doc. No. 127]; Defendant's Motion to Exclude Expert Testimony of

Sabrina West [Doc. No. 129]; Plaintiffs' Motion for Extension of Time to File

Response/Reply [Doc. No. 133]; Defendant's Motion to Exclude Expert Testimony

of Sharon Lane [Doc. No. 138]; Plaintiffs' Sixth Motion to Compel [Doc. No.

160]; Defendant's for Status Conference Hearing [Doc. No. 168]; Defendant's

Motion to Strike Inadmissible Evidence [Doc. No. 173].

## Facts and Background

Plaintiffs Teddy Scott ("Teddy") and Melanie Scott ("Melanie")

(collectively, "Plaintiffs") are a married couple and are both citizens of Kentucky.

Defendant Dyno Nobel, Inc. ("Dyno Nobel" or "Defendant") is a Delaware

corporation with its principal place of business in Utah.  Defendant owns and

operates a nitric acid manufacturing facility in Louisiana, Missouri (the "Plant").

On March 20, 2015, Plaintiff Teddy Scott was working as a contractor at the

2

Calumet Lubricants Co. ("Calumet") manufacturing facility, which is located south of and adjacent to the Dyno Nobel Plant.

Plaintiffs allege that while working at the neighboring Calumet facility, Teddy was exposed to harmful substances allegedly emitted from a smokestack at Dyno Nobel's Plant. Plaintiffs assert that the harmful substances were oxides of nitrogen ("NOx") which are released from the Plant during nitric acid operations.

About ten times per year, nitric acid operations at the Plant are shut down for maintenance. Defendant must then perform a "start-up" process to recommence nitric acid operations. During start-up, NOx emission levels are higher than they are during normal operations. Defendant's written safety procedures relating to start-ups include evacuating employees from certain areas of the Plant prior to start-up and informing other Dyno Nobel employees and the neighboring Calumet facility when a start-up is commencing.

On March 19, 2015, Defendant began the start-up process, but a mechanical failure around 5:00 a.m. on March 20 shut down the Plant's nitric acid operations. Around 8:30 a.m. on Mach 20, Defendant began the start-up process again. At this time, there was low cloud cover near the Plant. Plaintiffs allege that during start-up, a visible red-orange plume of NOx and other harmful emissions was released from Defendant's smokestack, "which remained low to the ground and changed directions due to wind, eventually passed over to, above, and onto the Calumet

Facility," where Teddy was outside working.  Teddy ingested, inhaled, and was
otherwise exposed to NOx emissions.  As a result of this contact with harmful
chemicals, Teddy sustained serious and permanent personal injuries including
development of respiratory, pulmonary, and neurological conditions.  Melanie
alleges loss of consortium resulting from these serious and permanent injuries
sustained by her husband Teddy.

In Count I, Plaintiffs allege that Defendant had a duty to manage and operate
the Plant in a reasonable manner and in a manner so as to avoid discharge of highly
toxic substances from its smokestacks when it was foreseeable that the discharge
of those substances could drift into the working environment of workers at the
Calumet facility.  Plaintiff further alleges that defendant breached its duty and as a
direct and proximate cause Plaintiff was damaged.  In Count II, Melanie Scott
alleges that due to Mr. Scott experiencing these injuries, she lost the consortium
and services of her husband.  Count II is prosecuted by Melanie, in her capacity as
the spouse of Teddy.

Plaintiffs seek redress for Defendant's alleged negligence (Count I) and loss
of consortium (Count II).  Defendant seeks summary judgment on both counts.

## Summary Judgment Standard

The Court may grant a motion for summary judgment if the movant shows
that there is no genuine dispute as to any material fact and that the moving party is

entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The substantive law determines which facts are critical and which are irrelevant.  Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex,* 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the mere existence of some alleged factual dispute. *Anderson,* 477 U.S. at 247.  The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson,* 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson,* 477 U.S. at 255.  The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Id.* at 249.

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine

dispute as to any material fact and that the movant is entitled to judgment as a

matter of law.

      In order to survive a motion for summary judgment, "the nonmoving party

must substantiate his allegations with sufficient probative evidence [that] would

permit a finding in [his] favor based on more than mere speculation, conjecture, or

fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir.

2011) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733–34 (8th Cir. 2003))

(internal quotation omitted).

## Discussion

### The injury was not foreseeable

      "In any action for negligence, a plaintiff must establish the defendant owed a

duty of care to the plaintiff, the defendant breached that duty, and the defendant's

breach proximately caused the plaintiff's injury." *Wieland v. Owner-Operator*

*Servs., Inc.*, 540 S.W.3d 845, 848 (Mo. 2018), reh'g denied (Apr. 3, 2018). The

basis for Defendant's summary judgment motion is that Plaintiffs lack evidence

showing that Defendant owed a duty to Plaintiffs, negating a necessary element of

Plaintiff's case.

      Whether a duty exists is purely a question of law. *L.A.C. ex rel. D.C. v.*

*Ward Parkway Shopping Ctr. Co., L.P.*, 75 S.W.3d 247, 257 (Mo. 2002).

> The touchstone for the creation of a duty is foreseeability.  A duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury. Where the existence of a duty is established, however, it is not one to protect against every possible injury which might occur.  Rather, it is generally measured by whether or not a reasonably prudent person would have anticipated danger and provided against it.

*Id.*  Foreseeability is defined as "the presence of some probability or likelihood of harm sufficiently serious that ordinary persons would take precautions to avoid it." *Lopez v. Three Rivers Elec. Co-op., Inc.*, 26 S.W.3d 151, 156 (Mo. 2000).  The test is not a balance of probabilities, and the existence of a mere possibility of harm is insufficient to give rise to a duty of care.  *Id.*  Rather, the risk of harm must exist with "some probability of sufficient moment to induce the reasonable mind to take precautions which would avoid it."  *Id.*  "No one is required to guard against or to take measures to avert that which under the circumstances is not likely to happen." *Komeshak v. Missouri Petroleum Prod. Co.*, 314 S.W.2d 263, 270 (Mo. App. St.L. 1958).

Defendant claims that although Plaintiffs may be able to show that an injury like Teddy's was possible, they cannot show that such an injury was probable, and therefore not "foreseeable" so as to create a duty of care.  Plaintiffs argue that Defendant had actual and constructive knowledge that "its startup emissions *might* injure someone nearby." (Emphasis added).  However, knowledge that an injury

"might" occur is does not constitute foreseeability sufficient to give rise to a duty of care.

Plaintiffs point to safety precautions taken by Defendant and statements by Defendant's employees regarding the hazards of startups as admissions that Teddy's injury was foreseeable.  Acknowledgement of the dangers of startups does not necessarily implicate foreseeability.  Admission that there are dangers inherent to an activity does not equate to liability for any improbable accident that may have involved that activity.  Rather, it seems that Plaintiffs are maintaining their strict liability argument which was already rejected by this Court.

Between the initiation of  Plant operations in the 1950s until Teddy's injury in 2015, there were no reports of injuries resulting from smokestack emissions at Dyno Nobel, nor were there any reports of startup emissions travelling the way Teddy described.  Plaintiffs purport to dispute these facts, claiming that the Dyno Nobel plant manager who testified to this in his deposition has only worked for Dyno Nobel since 2005 and therefore has no personal knowledge of events prior to 2005, and that Plaintiff offered no underlying corporate records to support this testimony.  However, Plaintiffs fail to set forth "specific facts" that show a genuine dispute as to the historical absence of events and injuries like those experienced by Teddy.  *Anderson,* 477 U.S. at 247.  "The non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Kraus*

*v. Celotex Corp.*, 925 F. Supp. 646, 649 (E.D. Mo. 1996) (*citing Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)) (internal quotation omitted).

It is therefore undisputed that no injuries related to smokestack emissions were reported in decades of operations at Dyno Nobel.  Even if an injury like Teddy's was a possibility, it would not have seemed at all probable when no injuries of the sort had occurred in 60 years.  An injury like Teddy's was not foreseeable.

In an apparent attempt to show that Defendant knew there was a significantly probable risk of emissions travelling in an undispersed cloud at ground level, Plaintiffs assert that Defendant evacuated personnel not only from the elevated tower, but also from all ground level areas during startups.  Plaintiffs' description of Defendant's startup procedure is flawed.  In fact, Defendant's safety protocol did not include evacuating all of its ground level employees during startup.  Defendant's undisputed startup checklist dictates that employees in the tower and contractors in the acid area must evacuate, but ground level employees in the loading and NAC area need only be notified of the startup.  The checklist also mandates that Calumet LLC be notified of all startups, and it is undisputed that Defendant did in fact notify Calumet LLC of the startup on March 20, 2015.  Moreover, it is undisputed that no reports of similar emissions activity were ever

reported before March 20, 2015.  There is no indication that Defendants believed that there was any meaningful probability that smokestack emissions would travel undispersed at ground level.  Plaintiffs offer no facts that show the risk of undispersed, ground level emissions was of "some probability of sufficient moment to induce the reasonable mind to take precautions which would avoid it." *Lopez*, 26 S.W.3d at 156.  This kind of irregular behavior from startup emissions was not foreseeable.

Defendant did not owe a duty to Plaintiffs.  In many years of operations, Defendant never received reports of an undispersed, ground level cloud of smokestack emissions, or of injuries from smokestack emissions.  Even if it was perhaps always a possibility that emissions could behave atypically and injure someone on the ground, nothing shows that the probability of that risk would have risen to a foreseeable level.  Defendant cannot and need not guard against every unlikely injury that "might" result from its operations.

### Conclusion

Plaintiffs fail to prove an essential element of their negligence claim, that is, that Defendant owed Teddy a duty of care.  In particular, no material facts remain in dispute as to the lack of foreseeability of Teddy's injury.  Because Melanie's loss of consortium claim depends on their negligence claim, it also fails.

All remaining motions pending in this case are denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 131] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Physical Examination of Teddy Scott [Doc. No. 36] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant's Emergency Motion to Compel Production of Teddy Scott's Medical Records [Doc. No. 71] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiffs' Second Motion to Compel [Doc. No. 75] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel Complete Reponses to Third Request for Production of Documents [Doc. No. 79] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiffs' Fourth Motion to Compel [Doc. No. 84] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that non-party Pike County Memorial Hospital's Motion to Quash Subpoena Duces Tecum [Doc. No. 105] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Expert Testimony of Jennifer Morningstar [Doc. No. 123] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Expert Testimony of Dr. Carla Sevin [Doc. No. 125] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Expert Testimony of Dr. Eric Norsworthy [Doc. No. 127] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Expert Testimony of Sabrina West [Doc. No. 129] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Extension of Time to File Response/Reply [Doc. No. 133] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment [Doc. No. 136] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Expert Testimony of Sharon Lane [Doc. No. 138] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiffs' Sixth Motion to Compel [Doc. No. 160] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant's Motion for Status Conference Hearing [Doc. No. 168] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Inadmissible Evidence [Doc. No. 173] is **DENIED** as moot.

A separate judgment in accordance with this Opinion, Memorandum and

Order is entered this same date.

Dated this  29th day of August, 2018.


_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE