# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| TEDDY SCOTT, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 4:16CV1440 HEA |
| DYNO NOBEL, INC., | ) |
| Defendant. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion for Sanctions for Failure to Timely Produce Plant Start-up Data from March 19 and 20, 2015 and Shutdown Checklist, [Doc. No. 106], and Plaintiffs' Renewed Motion for Sanctions, [Doc. No 214]. Plaintiff originally filed a Motion for Sanctions Regarding the March 20, 2015 Startup Data and Shutdown Checklist. The original motion was denied as moot when the Court granted Defendant's Motion for Summary Judgment. This Order granting the Motion for Summary Judgment was reversed on appeal by the Eighth Circuit Court of Appeals and remanded the matter. In its decision, the Appellate Court declined to rule on interlocutory discovery issues. Accordingly, Plaintiffs have renewed their motion for sanctions.

## Facts and Background

1

The factual background was set forth in the Court's August 29, 2018 Opinion, Memorandum and Order:  Plaintiffs Teddy and Melanie Scott (collectively, "Plaintiffs") are a married couple; both are citizens of Kentucky. Defendant Dyno Nobel, Inc. ("Dyno Nobel" or "Defendant") is a Delaware corporation with its principal place of business in Utah.  Defendant owns and operates a nitric acid manufacturing facility in Louisiana, Missouri (the "Plant"). On March 20, 2015, Plaintiff Teddy Scott was working as a contractor at the Calumet Lubricants Co. ("Calumet") manufacturing facility, which is located south of and adjacent to the Dyno Nobel Plant.

Plaintiffs allege that while working at the neighboring Calumet facility, Mr. Scott was exposed to harmful substances allegedly emitted from a smokestack at Dyno Nobel's Plant. Plaintiffs assert that the harmful substances were oxides of nitrogen ("NOx")[1] which are released from the Plant during nitric acid operations.

About ten times per year, nitric acid operations at the Plant are shut down for maintenance. Defendant must then perform a "start-up" process to recommence nitric acid operations. During start-up, NOx emission levels are higher than they are during normal operations. Defendant's written safety procedures relating to start-ups include evacuating employees from certain areas of the Plant prior to

---

[1] The parties do not dispute that, as used here, the term "NOx" includes nitric oxide (NO) and nitrogen dioxide ($NO_2$).

2

start-up and informing other Dyno Nobel employees and the neighboring Calumet facility when a start-up is commencing.

On March 19, 2015, Defendant began the start-up process, but a mechanical failure around 5:00 a.m. on March 20 shut down the Plant's nitric acid operations. Around 8:30 a.m. on March 20, Defendant began the start-up process again. There was low cloud cover near the Plant. Plaintiffs allege that during start-up, a visible red-orange plume of NOx and other harmful emissions was released from Defendant's smokestack, "which remained low to the ground and changed directions due to wind, eventually passed over to, above, and onto the Calumet Facility," where Mr. Scott was outside working. Mr. Scott allegedly ingested, inhaled, and was otherwise exposed to NOx emissions. As a result of this contact with harmful chemicals, Mr. Scott allegedly sustained serious and permanent personal injuries including development of respiratory, pulmonary, and neurological conditions.

In Count I, Plaintiffs allege that Defendant had a duty to manage and operate the Plant in a reasonable manner and in a manner so as to avoid discharge of highly toxic substances from its smokestacks when it was foreseeable that the discharge of those substances could drift into the working environment of workers at the Calumet facility.  Plaintiff further alleges that Defendant breached its duty and as a direct and proximate cause Plaintiff was damaged.  In Count II, Melanie Scott

alleges that due to Mr. Scott experiencing these injuries, she lost the consortium and services of her husband.

## Discussion

Plaintiffs contend Defendant intentionally withheld plant start-up data that occurred on March 19 and 20, 2015. Plaintiffs argue Defendant represented that all start-up data had been provided until it produced its own expert witness whose testimony is an analysis of the data and the foundation for criticism of Plaintiffs' expert for failing to consider the withheld data. Plaintiffs seek sanctions under Rule 37 of the Federal Rules of Civil Procedure to this alleged failure to disclose the data requested.

Defendant disputes that it withheld anything requested of it. Defendants argue that contrary to Plaintiffs' challenges, Plaintiffs were provided all the documents Plaintiffs sought. Indeed, Defendant argues that while information from databases may be otherwise discoverable, the rules demand specificity and require the party seeking data extraction from databases must specifically identify the databases to be searched and the specific information that is sought from the databases. No data extraction from Defendant's databases was ever requested.

Plaintiffs believe Defendant's failure to produce the data extractions regarding the start up and shutdown checklist was an intentional failure of Defendant to produce discoverable material. Defendant's position is that it was not

4

asked for the extraction of data from the databases and that it provided the documents and spreadsheets that Plaintiffs consistently requested. While discovery in this matter has been and continues to be clouded in murkiness, Defendant's representations to the Court convince the Court that Defendant did not intentionally withhold discoverable data. That being said, while Defendant indeed provided the documents requested, it did nothing to try to clarify if Plaintiffs were searching for anything within the databases; it would not have been prejudiced in anyway by discussing the extraction, as is evident at this time, since Plaintiff now has the data extraction. Indeed, the rules relating to discovery and the process of discovery itself is intended to shed light upon relevant and material facts and circumstances. Neither is intended to be a shield to obfuscate matters that are relevant and material.

## Conclusion

Based on the foregoing, the Court finds Defendant did not intentionally withhold discoverable material and therefore sanctions are not warranted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Sanctions, [Doc. No. 106] and their Renewed Motion for Sanctions, [Doc. No. 214] are **DENIED**.

Dated this 3rd day of September, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE