## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **TEDDY SCOTT, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:16CV1440 HEA** |
| | ) | |
| **DYNO NOBEL, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Dyno Nobel's Renewed

Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial

[Doc. No. 476].  Plaintiffs oppose the Motion.  For the reasons set forth below, the

Motion will be denied.

## Background

Plaintiff Teddy Scott ("Scott"), a worker at a neighboring facility, and his

wife, Melanie Scott ("Melanie"), brought this action against Defendant, a nitric

acid manufacturing plant operator, alleging that nitric oxides from the plant caused

severe injuries to Scott. This matter was tried before a jury beginning on April 18,

2022, and concluding on April 29, 2022. The Court denied Defendant's motion for

judgment as a matter of law at the close of all the evidence. The jury returned its

verdict in favor of Plaintiffs and against Defendant on April 29, 2022, for

negligence and loss of consortium. Damages were assessed as follows: actual damages to Scott in the amount of $13,750,000; actual damages to Melanie in the amount of $3,000,000; and punitive damages against Defendant in the amount of $30,000,000.

Defendant now renews the motion for judgment as a matter of law. In the alternative, Defendant requests a new trial[1] or an Order for remittitur.

## Legal Standards

### Judgment as a Matter of Law

Pursuant to Federal Rule of Civil Procedure 50, a court should render judgment as a matter of law "'when no reasonable jury could have found for the nonmoving party.'" *Monohon v. BNSF Ry. Co.*, 17 F.4th 773, 780 (8th Cir. 2021) (quoting *S. Wine & Spirits of Nev. v. Mountain Valley Spring Co.*, 646 F.3d 526, 533 (8th Cir. 2011)). A motion for judgment as a matter of law should be granted only if the jury's verdict is utterly lacking in evidentiary support. *In re Prempro Prods. Liab. Litig.,* 586 F.3d 547, 571 (8th Cir. 2009). This Court must assess whether the evidence is "'so one-sided that one party must prevail as a matter of law.'" *Adeli v. Silverstar Auto, Inc.,* 960 F.3d 452, 458 (8th Cir. 2020*)* (quoting *White v. Union Pac. R.R. Co*., 867 F.3d 997, 1000 (8th Cir. 2017)).

---

[1] Defendant also filed a Motion for New Trial based on legal and evidentiary errors (Doc. No. 474), which the Court will address in a separate Order.

On a motion for judgment as a matter of law, the Court must give "great deference to the jury's verdict." *Heaton v. The Weitz Co., Inc.,* 534 F.3d 882, 889 (8th Cir.2008) (citation omitted).  It bears emphasizing that "'the law places a high standard on overturning a jury verdict because of the danger that the jury's rightful province will be invaded when judgment as a matter of law is misused.'" *Washington v. Denney*, 900 F.3d 549, 558 (8th Cir. 2018) (quoting *Bavlsik v. Gen. Motors, LLC*, 870 F.3d 800, 805 (8th Cir. 2017)).

When deciding a motion for judgment as a matter of law, this Court must:

(1) consider the evidence in the light most favorable to the prevailing party,
(2) assume that all conflicts in the evidence were resolved in favor of the prevailing party,
(3) assume as proved all facts that the prevailing party's evidence tended to prove, and
(4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved.

*Ryan Data Exchange, Ltd. v. Graco, Inc.*, 913 F.3d 726, 732–33 (8th Cir. 2019).

Judgment as a matter of law should not be granted unless "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). In applying this standard, the Court may not make credibility determinations or weigh the evidence. *In re Prempro,* 586 F.3d at 572 (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)). The nonmoving party receives the benefit of all inferences which can be drawn without

resort to speculation. *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.,* 401 F.3d 901, 908–09 (8th Cir. 2005). Specifically, the Court assumes all conflicts in the evidence were resolved in Plaintiff's favor, assume Plaintiff proved all facts that his evidence tended to prove, and give Plaintiff the benefit of all favorable inferences that reasonably may be drawn from the proven facts. *Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.,* 528 F.3d 1001, 1009 (8th Cir.2008) (citations omitted). "Judgment as a matter of law is appropriate '[w]hen the record contains no proof beyond speculation to support [a] verdict.'" *First Union Nat. Bank v. Benham*, 423 F.3d 855, 863 (8th Cir. 2005) (quoting *Sip-Top, Inc. v. Ecko Group, Inc.*, 86 F.3d 827, 830 (8th Cir. 1996)).

## New Trial

New trials based on the weight of the evidence are generally disfavored, and the district court's authority to grant a new trial should be exercised sparingly and with caution. *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002). The jury's verdict must be allowed to stand unless the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred. *United States v. Lacey*, 219 F.3d 779, 783 (8th Cir. 2000); *United States v. Anwar*, 428 F.3d 1102, 1109 (8th Cir. 2005) (stating that a district court may weigh the evidence and evaluate for itself the credibility of the witnesses in determining whether a new trial is warranted). The evidence must be viewed in the light most favorable to the

4

nonmoving party while assuming as proven all facts the evidence tends to show, resolving all evidentiary conflicts in the nonmoving party's favor, and affording all reasonable inferences to the nonmoving party. *Sheriff v. Midwest Health Partners, P.C.*, 619 F.3d 923, 929 (8th Cir. 2010).

## Discussion

### Judgment as a Matter of Law

**Negligence**

Defendant argues that Plaintiffs failed to prove the elements of Scott's negligence claim. To present a submissible case in a negligence action, "a plaintiff must establish the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and the defendant's breach proximately caused the plaintiff's injury." *Wieland v. Owner-Operator Servs., Inc.,* 540 S.W.3d 845, 848 (Mo. 2018).

Foreseeability and Duty

Defendant contends that Plaintiffs did not prove that the risk of harm to Scott was foreseeable. In this case, the United States Court of Appeals for the Eighth Circuit held that the question of foreseeability was not appropriate for summary judgment and reversed and remanded for further proceedings before this Court. *Scott v. Dyno Nobel*, Inc., 967 F.3d 741 (8th Cir. 2020). Based upon the evidence, the Eight Circuit held that "the

question of foreseeability is subject to varying inferences and is therefore an issue for the jury." *Id.* at 747 (8th Cir. 2020). The Eighth Circuit found that "a reasonable jury could find that the circumstances of the emissions in this case created 'some probability or likelihood of harm sufficiently serious that ordinary persons would take precautions to avoid it.'" *Id.*

When exercising diversity jurisdiction, like in this case, the forum state's substantive law to any state-law claims is applied. *Bazzi v. Tyco Healthcare Grp., LP,* 652 F.3d 943, 946 (8th Cir. 2011). Under Missouri law,

> The touchstone for the creation of a duty is foreseeability.  A duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury. Where the existence of a duty is established, however, it is not one to protect against every possible injury which might occur.  Rather, it is generally measured by whether or not a reasonably prudent person would have anticipated danger and provided against it.

*L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co., L.P.*, 75 S.W.3d 247, 257 (Mo. 2002).

Defendant contends the evidence primarily relied upon by Plaintiffs' expert witness, Professional Engineer Jennifer Morningstar, was insufficient to establish foreseeability and Defendant did not owe its neighbors and/or ground-level workers a duty to warn about or protect against the plume of gases generated during the startup. Defendant supports its argument by attacking Morningstar's

6

testimony and arguing that the weather conditions, such as the temperature, wind direction/speed, and cloud cover and humidity, on the date of the incident would not have led an ordinarily reasonable nitric-acid manufacturer to anticipate its emissions would drop to the ground while still dangerously concentrated.

In response to the motion, Plaintiffs argue they produced evidence regarding Defendant's knowledge that NOx is a dangerous substance, and a potential hazard to the public when released into the air. For example, Defendant trained its employees to avoid NOx emissions reaching the ground and knew NOx exposure can cause long-term damage, even in very small quantities when the concentrations are high. Defendant's employees testified they were aware of the potential hazard NOx emissions could cause to the plant's neighbors. In addition, Morningstar testified about thermodynamics and the weather conditions on the date of the incident, opining that the risk from its smoke under the circumstances was foreseeable.

While Defendant disagrees with the outcome of the trial, the jury was presented with evidence from which it could assess whether the risk of harm was foreseeable to Scott.  It was the jury's duty to weigh the evidence and determine foreseeability, which is defined as "the presence of some probability or likelihood of harm sufficiently serious that ordinary persons would take precautions to avoid it." *Lopez v. Three Rivers Elec. Co-op., Inc.*, 26 S.W.3d 151, 156 (Mo. 2000). The

risk of harm must exist with "some probability of sufficient moment to induce the reasonable mind to take precautions which would avoid it." *Id*. In fact, a special interrogatory on the verdict form asked the jury that very question:

> Did the circumstances on March 20, 2015, create some probability of harm to someone on a neighboring facility sufficiently serious that ordinary persons would take precautions to avoid it?

The jury responded "Yes." A "duty exists when a general type of event or harm is foreseeable." *Pierce v. Platte-Clay Elec. Co-op, Inc.,* 769 S.W.2d 769, 776 (Mo. 1989).

Thus, considering all evidence, a reasonable jury could find that the risk of harm to Scott was foreseeable.

Standard of Care

Next, Defendant argues that Plaintiffs did not offer sufficient evidence to establish Defendant's standard of care applicable to nitric-acid plants. Defendant maintains that Morningstar's testimony (1) was insufficient for Plaintiffs to carry their burden because she was not qualified to offer the requisite opinion as to nitric-acid plants; and (2) her testimony should not have been admitted because she lacks the "knowledge, skill, experience, training, or education" required to be qualified as an expert under Fed. R. Evid. 702.

While expert testimony is generally required to establish the "degree of skill and care ordinarily used under the same or similar circumstances by members of [a defendant's] profession" in professional negligence cases, ordinary negligence cases have no such threshold requirement. *Stalcup v. Orthotic & Prosthetic Lab, Inc.*, 989 S.W.2d 654, 657 (Mo. App. 1999).

Defendant relies on the requirement of expert testimony in a professional negligence case with an expert's testimony based upon the objective industry standard as set out in the Eighth Circuit's decision in *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.,* 254 F.3d 706 (8th Cir. 2001). However, in *First Union*, the Eighth Circuit distinguished its holding from *Wheeling*, finding that the opinion regarding the standard of care of an Arkansas attorney, who had substantial experience in the mergers and acquisition fields, was admissible expert testimony even though the attorney's conclusions were based on his own experience, and not the experience of other lawyers. *First Union*, 423 F.3d at 862-63. The Eighth Circuit explained that the flood risk management expert at issue in *Wheeling* "sorely lacked the *education, employment, or other practical personal experiences* to testify as an expert specifically regarding safe warehousing practices." *Id.* (quoting *Wheeling*, 254 F.3d at 715). Meanwhile, the attorney expert in *First Union* properly relied on his employment and practical personal experience

in opining on the reasonable diligence and skill used by attorneys. *Id.* at 863. *First Union* is instructive here, and Defendant fails to convince the Court otherwise.

Morningstar's background, qualifications, methodology and the extent to which she was allowed to testify with respect to the standards of care to which an ordinarily careful nitric-acid plant must adhere was addressed more than once by this Court in pretrial motions. Morningstar testified as anticipated. Defendant's arguments that her testimony should have been excluded are without merit as Morningstar's qualifications clearly establish her as an expert in the field of chemical engineering. She has a B.S. degree in chemical engineering, is a licensed Professional Engineer and has over fifteen years of work experience as an engineer or consultant in chemical plants. In addition, Morningstar has firsthand experience working in a chemical plant that performed startups and emitted dangerous chemicals through a smokestack. She also has an OSHA-based certification in process hazard analysis. Morningstar's opinion that Defendant should have warned neighboring facilities of the startup and informed them about the possible presence of toxic emissions was based on her experience and education, as well as the industry "norm" the employees have the right to know of hazards in their workplaces. The jury heard the testimony regarding the applicable standards for the industry standard, noted as the engineering safety hierarchy, and the data she relied on for her opinion.  This testimony aided the jury in making its

10

determination as it related to the facts of this case.  Morningstar's testimony was properly limited and properly allowed. Therefore, no "standard of care" as contemplated by Defendant was required for Plaintiffs to make a submissible case to the jury, and Morningstar was qualified as an expert under Fed. R. Evid. 702.

Further, as Plaintiffs correctly argue in their response, even without Morningstar's testimony, the jury heard other testimony about industry standards, which required Defendant to follow the safety hierarchy to eliminate/reduce hazards. Defendant's own employees and chemical engineering expert, also referenced in Defendant's policies, confirmed that an ordinary careful nitric acid plant must make sure its NOx emissions were not capable of being breathed in by a potentially affected neighbor.

<u>Causation</u>

Defendant argues that Plaintiffs did not offer sufficient evidence of causation because toxic exposure requires evidence of general and specific causation, and Dr. Carla Sevin's testimony had no reliable basis for her causation opinion because she did not perform a reliable differential diagnosis.

In their response, Plaintiffs assert that they produced sufficient evidence of causation and that Dr. Sevin, a physician specializing in pulmonology, performed a legally sufficient differential diagnosis. For general causation, Defendant's documents established that NOx was capable of causing the type of injuries Scott

11

sustained, and that NOx exposure can cause long-term damage and harm, even in both high and low concentrations. Defendant admitted that NOx can cause heightened laryngeal sensitivity resulting in irritable larynx syndrome, one of Scott's diagnosed injuries. Additionally, Dr. Sevin testified about general causation. For instance, Dr. Sevin performed research of medical literature about the effect of NOx and nitric acid, had experience treating patients exposed to NOx and reviewed epidemiology literature regarding its health effects.

For specific causation, Otis Jamison testified he saw Scott in the visible smoke coming from the smokestack, which Scott also testified to. Dr. Sevin was aware of these statements and knew other workers had similar symptoms as Scott after the exposure that day. Dr. Sevin reviewed literature research, medical records, physical examinations of Scott, diagnostic testing and knowledge of history and symptoms. It was not disputed that NOx exposure can cause pulmonary symptoms and injuries, like Scott experienced. Additionally, Scott testified his symptoms presented immediately after, and only after, he was enveloped by a chemical cloud. This is relevant to Dr. Sevin's causation determination, specifically, to her focus on NOx as a possible cause of Scott's injuries. The Eighth Circuit has held that a toxic tort plaintiff does not need to produce "a mathematically precise table equating levels of exposure with levels of harm" in order to show that he was exposed to a toxic level of a chemical, but only "evidence from which a reasonable person could

conclude" that the plaintiff's exposure probably caused his injuries. *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 928 (8th Cir. 2001) (quoting *Bednar v. Bassett Furniture Mfg. Co.,* 147 F.3d 737, 740 (8th Cir.1998)) (internal quotation marks omitted).

Dr. Sevin also adequately "ruled out" other possible causes of Scott's injuries. The Eighth Circuit has held that "differential diagnosis" can be misleading as the medical community and the legal community have different understandings of the meaning of the term. *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1208 (8th Cir. 2000). In the legal context, "differential diagnosis," means a technique to identify the cause of a medical condition by eliminating the likely causes until the most probable cause is isolated. *Id.*  The Eighth Circuit has "consistently ruled that experts are not required to rule out all possible causes when performing the differential etiology analysis."  *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 563 (8th Cir. 2014).

Dr. Sevin testified about ruling out other possible causes of Scott's injuries. In doing so, Dr. Sevin relied on Scott's health history and records, his statements, and a report regarding the incident at issue. Dr. Sevin testified that she considered and eliminated acid reflux, sleep apnea, and any chemicals or lubricants at Scott's workplace as a cause and concluded that Scott had an "occupational exposure to oxides of nitrogen." Additionally, Defendant's experts confirmed high exposures

to NOx can cause laryngospasms, long-term problems, including irritation of the nose, throat, and larynx, headaches, fatigue, respiratory tract irritation and dyspnea, consistent with Scott's injuries and exposure on March 20, 2015.

A "differential expert opinion can be reliable even 'with less than full information.'" *Id.* at 564 (quoting *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 759 (3d Cir.1994)). "Instead, such considerations go to the weight to be given the testimony by the factfinder, not its admissibility." *Id.*

Plaintiffs presented sufficient evidence of causation regarding Scott's injuries.

**Punitive Damages**

Defendant attacks Plaintiffs' claim for punitive damages, arguing the clear and convincing standard was not met.

Under Missouri law, the purpose of the imposition of punitive damages is for punishment and deterrence. *Rodriguez v. Suzuki Motor Corp.,* 936 S.W.2d 104, 110 (Mo. 1996), quoting *State ex rel. Smith v. Greene*, 494 S.W.2d 55, 60 (Mo. banc 1973). Before punitive damages can be awarded, a plaintiff must present clear and convincing evidence that Defendant either knew or had reason to know that there was a high degree of probability that Defendant's conduct would result in injury. *Lopez*, 26 S.W.3d at 160; *see also*, *Alack v. Vic Tanny Intern. of Missouri, Inc.,* 923 S.W.2d 330, 338 (Mo. banc 1996). Plaintiff must prove, either by direct

or circumstantial evidence, that Defendant "acted with either an evil motive or a reckless indifference to the plaintiff's rights." *May v. Nationstar Mortg., LLC,* 852 F.3d 806, 814 (8th Cir. 2017), citing *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. 1989); *see also, Trickey v. Kaman Indus. Techs. Corp.,* 705 F.3d 788, 799 (8th Cir. 2013). The Court must determine "whether the evidence—giving full play to the jury's right to determine credibility, weigh the evidence and draw justifiable inferences of fact—is sufficient to permit a reasonable juror to conclude that the plaintiff established with convincing clarity—that is, that it was highly probable— that the defendant's conduct was outrageous because of evil motive or reckless indifference." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

In response, Plaintiffs sets out that they produced evidence about Defendant's knowledge that any amount of NOx is dangerous, especially in high concentrations, which can be deadly and severely toxic, but even a small amount of NOx exposure can cause long-term damage. Defendant's employees testified they were aware of the potential hazard to the public when NOx is released in the air, and NOx emissions could cause harm to the plant's neighbors. Based upon the industry standards, Defendant knew that an ordinarily careful nitric acid plant must make sure NOx emissions could not be breathed in by a potentially affected neighbor, and it was required to follow the safety hierarchy to eliminate and/or reduce that hazard because of the risks associated with emitting a toxic chemical

15

into the atmosphere. Further, the plant's air permit had been grandfathered in, making it the only plant of Defendant's that did not have NOx abatement technology that would assist in eliminating the amount of NOx released into the air. Based on this information, a reasonable jury could find that Defendant intentionally proceeded to release NOx smoke during the second startup after the first one was unsuccessful, without taking precautions, resulting in Scott's injuries on March 20, 2015. For example, Plaintiffs presented evidence that Defendant knew that the second startup was dangerous because workers were present next door, and the weather conditions could increase the risk of emissions from not rising and/or be scattered at ground level, potentially endangering the nearby workers. Defendant chose not to follow its work procedures when continuing the second startup by conducting a "Take5!," designed as a safety step before moving forward when an operation changes, as it did here. Further, Defendant had access to live data showing when NOx was moving through its system, but did not monitor the NOx emissions during startup, even though there were people nearby.

Plaintiffs' evidence supports the jury's assessment of punitive damages against Defendant. It is the jury's role "to evaluate [the] evidence and decide what inferences should be drawn from it." *JCB, Inc. v. Union Planters Bank, NA*, 539 F.3d 862, 873 (8th Cir. 2008). The jury's verdict is only overturned when "there is a complete absence of probative facts" such that "no proof beyond speculation

16

[supports] the verdict." *Wilson v. Brinker Int'l, Inc.,* 382 F.3d 765, 769 (8th Cir. 2004) (quoting Fed.R.Civ.P. 50). In other words, "[j]udgment as a matter of law is appropriate only when the record contains no proof beyond speculation to support the verdict." *Id.* at 770

Viewing all reasonable inferences in favor of the jury's verdict awarding punitive damages, it is reasonable to conclude that, despite the known dangers of releasing NOx emissions given the circumstances on March 20, 2015, Defendant recklessly disregarded other peoples' safety by continuing the startup without taking the proper precautions. Plaintiffs "established with convincing clarity—that is, that it was highly probable—that the defendant's conduct was outrageous because of evil motive or reckless indifference." *Anderson,* 477 U.S. 242 at 255. Therefore, Defendant is not entitled to judgment as a matter of law on Plaintiffs' claim for punitive damages.

### New Trial or Remittitur on Jury's Damages Awards

Defendant argues in the alternative to judgment as a matter of law, the Court should grant a new trial or order a remittitur of the jury's damages awards.

A district court may remit a jury verdict or grant a new trial based on an excessive verdict "only when [the verdict] is so grossly excessive that there is plain injustice or a monstrous or shocking result." *Eckerberg v. Inter-State Studio &*

*Publ'g Co.*, 860 F.3d 1079, 1088 (8th Cir. 2017) (quoting *Hudson v. United Sys. of*

*Arkansas, Inc.*, 709 F.3d 700, 705 (8th Cir. 2013)).

In Missouri, a verdict is excessive when it exceeds "fair and reasonable

compensation." *Wright v. Byron Fin., LLC,* 877 F.3d 369, 374 (8th Cir. 2017)

(citing *Eckerberg*, 860 F.3d at 1088 and Mo. Rev. Stat. § 537.068).

> "A verdict is not excessive unless the result is monstrous or shocking." *Est. of Snyder v. Julian*, 789 F.3d 883, 888 (8th Cir. 2015); *Miller v. Huron Regional Med. Ctr.*, 936 F.3d 841, 846 (8th Cir. 2019) ("[R]emittitur is reserved for cases where the verdict is so grossly excessive as to shock the judicial conscience."); *Bennett v. Riceland Foods, Inc.*, 721 F.3d 546, 553 (8th Cir. 2013) ("Remittitur is appropriate where the verdict is so grossly excessive as to shock the judicial conscience.").

> "[T]he trial court may not substitute its judgment for that of the jurors. The determination of the amount of damages is peculiarly within the province of the jury. Such determination rests largely in its discretion." *Taylor v. Otter Tail Corp.*, 484 F.3d 1016, 1020 (8th Cir. 2007) (quoting source and internal quotation marks omitted). "A new trial or remittitur is not appropriate merely because we may have arrived at a different amount from the jury's award." *Joseph J. Henderson & Sons, Inc. v. Travelers Property Casualty Ins. Co. of America*, 956 F.3d 992, 1001 (8th Cir. 2020) (quoting source and internal quotation marks omitted); *Bennett*, 721 F.3d at 553 ("We will not order a new trial or remittitur merely because we may have arrived at a different amount from the jury's award."). "Remittitur is not appropriate merely because the district court would have awarded a different amount than the jury. Rather, the court orders remittitur when it believes the jury's award is unreasonable on the facts." *Miller*, 936 F.3d at 846 (internal citations omitted). "Only if damages are so excessive as to be without the support of the evidence should the court disturb a jury's verdict of damages." *Taylor*, 484 F.3d at 1020.

*Steak N Shake, Inc. v. White*, No. 4:18-CV-00072-SRC, 2021 WL 4819592, at *6–

7 (E.D. Mo. Oct. 14, 2021).

**Actual Damages**

The jury awarded actual damages to Scott in the amount of $13,750,000 and to Melanie in the amount of $3,000,000. Defendant argues because the damages amounts were based on improper considerations and the awards are not fair and reasonable, the Court should order a new trial or remittitur.

Scott's Actual Damages

Defendant first attacks Plaintiffs' closing argument, stating they improperly made a *per diem* argument. However, Defendant is assuming the breakdown of the jury award for the basis of its argument. The jury's verdict for Scott was for "actual" damages, without an explanation of how much they calculated for specific categories, like loss of income and pain and suffering. The verdict reads,

"We, the undersigned jurors, access[sic] the damages as follows:

For the actual damages of plaintiff Teddy Scott $13,750,000..."

This argument has no merit as Defendant is basing the jury's intent for the award on assumptions.

Defendant next argues the jury's award for Scott's pain and suffering is not fair and reasonable.

"'There is no precise formula for determining whether a verdict is excessive,' but the 'ultimate test is what fairly and reasonably compensates plaintiff for the injuries sustained.'" *Est. of Snyder*, 789 F.3d at 888 (quoting

*Graeff v. Baptist Temple of Springfield*, 576 S.W.2d 291, 309 (Mo. 1978)). The "inquiry is fact-specific" and "[t]he range between an inadequate award and an excessive award for pain and suffering can be enormous and substantial disparity among juries as to what constitutes pain and suffering must be expected." *Payne v. Fiesta Corp.*, 543 S.W.3d 109, 131 (Mo. Ct. App. 2018) (citations omitted). "In determining whether an award is excessive, Missouri courts consider a number of factors: "(1) loss of income, both present and future; (2) medical expenses; (3) plaintiff's age; (4) the nature and extent of plaintiff's injuries; (5) economic considerations; (6) awards given and approved in comparable cases; and (7) the superior opportunity for the jury and the trial court to evaluate plaintiff's injuries and other damages." *Emery v. Wal-Mart Stores, Inc.,* 976 S.W.2d 439, 448 (Mo. 1998) (citing *Tennis v. Gen. Motors Corp.*, 625 S.W.2d 218, 229 (Mo. Ct. App. 1981)). Additionally, a "judgment may be based in part on 'certain intangibles' that do not lend themselves to precise calculation, such as past and future pain, suffering, effect on life-style, embarrassment, humiliation, and economic loss." *Knifong v. Caterpillar, Inc.,* 199 S.W.3d 922, 928 (Mo. Ct. App. 2006). Under Missouri law, "there is no bright-line rule that non-economic damages cannot exceed economic damages by any certain multiplier...." *Evans v. FirstFleet,* Inc., 345 S.W.3d 297, 302 (Mo. Ct. App. 2011) (quotation omitted). In fact, Missouri courts have deemed verdicts awarding only non-economic damages as not

excessive. *See, e.g., Bojorquez v. O'Keeffe*, 605 S.W.3d 380, 396–400 (Mo. Ct. App. 2020); *Payne,* 543 S.W.3d at 130–133. Moreover, the Eighth Circuit has stated that its "precedent supports upholding non-economic jury awards for situations in which pain and suffering are significant." *Eckerberg*, 860 F.3d at 1088–89 (applying Missouri law). The Eighth Circuit has further explained that "[a]wards for pain and suffering are often 'highly subjective and should be committed to the sound discretion of the jury, especially when the jury is being asked to determine injuries not easily calculated in economic terms.'" *Id.* (quoting *Hudson*, 709 F.3d at 705).

Plaintiffs' response to the instant motion correctly assesses each of these factors in their favor, and the jury's verdict cannot be said to be unreasonable on these facts. For loss of income, medical expenses and age, Scott was 50 years old at the time of the trial, he could no longer work based on his injuries and no evidence of medical expenses were presented. His life expectancy is estimated for another 29.9 years, and testimony presented by Plaintiff estimated a *conservative* amount of $1,661,555 for Scott's loss of income. The jury is free to award damages above that amount. *Mansfield v. Horner*, 443 S.W.3d 627, 642 (Mo. App. 2014). As to the nature and extent of Scott's injuries and other considerations, the jury heard considerable evidence over nearly two weeks regarding his significant injuries. Scott's whole life was altered based on his injury, from physical pain,

emotional anguish and quality of life. For instance, Scott has daily back pain, headaches and trouble sleeping. He has irritable larynx syndrome and constantly fears he will have a laryngeal spasm that feels like he is being choked and often causes black outs. His back pain is a result of a laryngeal spasm that he passed out from, fell, and hurt his back, which required pain medication, physical therapy, and surgical injections, and resulted in stenosis and disc bulges. These injuries are permanent and prevent Scott from working, driving, and living a normal life, also resulting in anxiety, depression, and emotional damage to his quality of life and overall sense of purpose and identity.

Comparable cases have affirmed multi-million-dollar awards for these types of injuries. See *Phipps v. Copeland Corp. LLC*, 64 Cal. App. 5th 319, 344 (Ca. App. 2021), as modified on denial of reh'g (June 10, 2021), review denied (Aug. 11, 2021) (affirming $25 million in noneconomic damages); *Brand v. International Flavors & Fragrances Inc*., 2005 WL 4257508 (Mo. Cir. Ct. Mar. 1, 2005) ($12 million noneconomic for lung damage); *New Haverford P'ship v. Stroot*, 772 A.2d 792, 796 (Del. 2001) (affirming $1 million for asthma and sinus problems); *Nice v. ZHRI, Inc.,* 105 F. Supp. 2d 1028, 1030 (E.D. Ark. 2000), *aff'd,* 11 Fed. Appx. 675 (8th Cir. 2001) (upholding $1.3 million for lost sense of smell, scarring, and neck pain).

The last factor, the superior opportunity for the jury and the trial court to evaluate Plaintiff's injuries and other damages, undoubtably weighs heavily in favor of Plaintiffs. Plaintiffs offered significant evidence regarding the nature and extent of Scott's injuries, and the jury had the superior opportunity to assess the extent of the pain and suffering Scott has  and will endure in the future. Moreover, both Missouri and Eighth Circuit precedent acknowledge pain and suffering are highly subjective and thus difficult to quantify. *Knifong*, 199 S.W.3d at 928; *Eckerberg*, 860 F.3d at 1088–89.

Melanie's Loss-of-Consortium Award

Defendant makes the same argument regarding Melanie's $3 million loss of consortium award; that it is not fair and reasonable.

In addition to the evidence regarding Scott's injuries as stated above, the jury heard testimony from Melanie and friends of Plaintiffs. Scott was Melanie's best friend, always helping around the house, with their children, and working hard to support and provide an income for the family. After Scott's injury, she testified he can no longer help, leaving her to handle the everyday tasks alone. He is not self-sufficient and cannot drive, work, help with the children or housework or be left alone for long periods of time. Melanie now must take on the additional task of attending to Scott constantly, becoming his caretaker instead of his wife. They no

longer have big family dinners, go to social events and even sexual activity can trigger Teddy's laryngeal spasms.

"The Supreme Court of Missouri has suggested that the extent of the uninjured spouse's recovery for loss of consortium 'depends, in large measure,' upon the extent of the injured spouse's injuries." *Kingman v. Dillard's, Inc*., 643 F.3d 607, 617 (8th Cir. 2011) (quoting *State ex rel. St. Louis Pub. Serv. Co. v. McMullan*, 297 S.W.2d 431, 436 (Mo. banc 1956)). Moreover, a spouse may recover for having "to take on 'varied and sundry duties' above and beyond the norm." *Id*. at 616. Comparable cases have affirmed similar loss-of-consortium awards. *Jacobs v. Yellow Cab Affiliation, Inc.,* 2017 IL App (1st) 151107, ¶ 132, 73 N.E.3d 1220 ($3.96 million); *Fox v. Hayes*, 600 F.3d 819, 845 (7th Cir. 2010) ($2.7 million loss); *Brand*, 2005 WL 4257508 ($3 million).

Applying the stated factors and considering the evidence in the case, the damage awards for Plaintiffs in this case were not "so grossly excessive as to be monstrous, shocking, or plainly unjust" as to require a new trial or remittitur. *Wright,* 877 F.3d at 374 (citing *Eckerberg*, 860 F.3d at 1087). Rather, the verdict "fairly and reasonably compensates [Plaintiffs] for the injuries sustained." *Est. of Snyder*, 789 F.3d at 888 (quoting *Graeff,* 576 S.W.2d at 309).

**Punitive Damages**

Defendant next argues that the $30,000,000 punitive damages award is unconstitutionally excessive because it violates the Due Process Clause of the Fourteenth Amendment.

Although juries have considerable flexibility in determining the punitive damages amount, the Due Process Clause prohibits "grossly excessive civil punishment." *Trickey*, 705 F.3d at 802 (quoting *Ondrisek v. Hoffman*, 698 F.3d 1020, 1028 (8th Cir. 2012)). Punitive damages are grossly excessive if they "shock the conscience" of the court or "demonstrate passion or prejudice on the part of the trier of fact." *Ondrisek*, 698 F.3d at 1028 (quoting *Stogsdill v. Healthmark Partners, L.L.C.*, 377 F.3d 827, 832 (8th Cir. 2004)).

The following factors when determining whether a punitive damages award shocks the conscience or demonstrates passion or prejudice are:

> "(1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between actual or potential harm suffered and the punitive damages award (often stated as a ratio between the amount of the compensatory damages award and the punitive damages award); and (3) the difference between the punitive damages award and the civil penalties authorized in comparable cases."

*Id.* (*quoting Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 602 (8th Cir. 2005)); *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574–75 (1996).

These factors collectively serve as "guideposts ... to ensure proper notice of the penalty associated with [the defendant's] conduct." *Id.*

For the first factor, "the presence of just one indicium of reprehensibility is sufficient to render conduct reprehensible and support an award of punitive damages." *May*, 852 F.3d at 816 (citing *Trickey*, 705 F.3d at 803). Defendant contends that its conduct cannot be categorized as reprehensible. However, the jury clearly credited that Scott's injuries, such as daily headaches, mental suffering, and the laryngeal spasms he has experienced that feels like he is being choked and often black outs from, are attributable to Defendant's conduct. The jury heard evidence that Scott's pain occurs and affects him daily, and his injuries are not ones that he is expected to recover from but that he will live with for the rest of his life. Further, as mentioned throughout, there was overwhelming evidence of Defendant's knowledge about the toxicity and dangerousness of NOx emissions and the severity of harm that NOx exposure can cause, including long-term damage and even death. Plaintiff's evidence here supports that Defendant's conduct was reprehensible as Scott suffered physical and mental harm.

As to the second factor, Defendant maintains that the ratio between Scott's $30,000,000 punitive award and Plaintiffs' compensatory awards are too great. At most, according to Defendant, a 1–to–1 ratio is appropriate.

The Eight Circuit does not apply "a simple mathematical formula" to determine the constitutionality of a punitive damages award. *Gore*, 517 U.S. at 582. But few awards exceeding a single-digit ratio of punitive to compensatory damages will satisfy due process. *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 419 (2003). The Supreme Court has previously "concluded that an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Id.* at 425 (citing *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23–24 (1991)). A 4–to–1 ratio likely will survive any due process challenge "given the historic use of double, treble, and quadruple damages." *Wallace v. DTG Operations, Inc.,* 563 F.3d 357, 363 (8th Cir. 2009); *see also, May,* 852 F.3d at 817 (affirming 8–to–1 ratio); *Trickey*, 705 F.3d at 804 (affirming a 5–to–1 ratio); *Morse v. S. Union Co.*, 174 F.3d 917, 925–26 (8th Cir. 1999) (affirming a 5.7–to–1 ratio).

Here, comparing Scott's $13,750,000 award and Melanie's $3,000,000 award to the $30,000,000 punitive award results in a 1.79:1 ratio. Just comparing Scott's award to the punitive award results in a 2.18:1 ratio. The jury clearly credited Plaintiffs' evidence that Defendant's conduct proved an indifference to or reckless disregard for the health and safety of others. The $30,000,000 punitive award also accounts for only one and a half percent of Defendant's approximate $2 billion net worth. *Trickey*, 705 F.3d at 804 (considering net worth of Defendant as

relevant to the analysis). Under the facts and circumstances presented, the ratio of Plaintiffs' awards "[do] not set off any alarm bells," and it is not unconstitutionally excessive. *Id.*

The final factor is the "disparity between the punitive damages award and the civil penalties authorized[2] or imposed in comparable cases." *Campbell*, 538 U.S. at 428. Defendant does not address this factor specifically and makes its argument on the basis that Defendant's conduct was not reprehensible, and the punitive damages should be remitted to a 1:1 ratio with Scott's actual damages.

In sum, the jury's $30,000,000 punitive damages award does not violate the Due Process Clause of the Fourteenth Amendment.

## <u>Conclusion</u>

The Court gives great deference to the jury's verdict.  *Heaton,* 534 F.3d at 889. Defendant has failed to establish that it is entitled to a judgment as a matter of law or, in the alternative, a new trial or remittitur.  Therefore, Defendant's Motion will be denied.

Accordingly,

---

[2] For comparable civil penalties, there is no civil penalty for negligence in Missouri. The absence of comparable civil penalties does not render the punitive damages award unconstitutionally excessive. *See Trickey*, 705 F.3d at 804; *May,* 852 F.3d at 818; *Morse*, 174 F.3d at 925–26.

**IT IS HEREBY ORDERED** that Defendant's Renewed Motion for

Judgment as a Matter of Law, or in the Alternative, for a New Trial [Doc. No. 476]

is **DENIED.**

Dated this 31st day of August, 2022.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE